E-FILED
Tuesday, 17 November, 2026 01:36:49 PM
Clerk, U.S. District Court, ILCD

FILED
11/17/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

HARRY R. HAURY; LAURA HOIS; ROBERT R. "RUSTY" STEVENS; JIMMY LEE TILLMAN II; JODIE ZITKO; MARY CATHERINE PAUKSTYS; and GREGORY STENSTROM,

Plaintiffs,

v.

BERNADETTE MATTHEWS and JOHN OLDFIELD, each in his or her official capacity,

Defendants.

Case No. 26-cv-3397

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs seek enforcement of continuing federal duties before certification of the November 3, 2026 election. Successive official files through May 13, 2026 contain extensive changes to earlier participation histories; individual histories remain disputed; and 2026 requests have not supplied the operational records needed to reconcile those conditions. Illinois acknowledged the requests, produced general materials, and promised a supplement. Plaintiffs request immediate inspection, sworn accountability, and independent examination of the continuing processes, with an urgent hearing on any necessary, limited certification restraint. The injuries are concrete. Two Plaintiffs dispute entries in their own voting histories. Two were candidates in the November 3 election and need the records during the canvass of their races. The requesting individuals cannot complete their existing Illinois inspection and correction work without the records. The substantive claims concern whether the State actually performed its federal list-maintenance duties,

including lawful follow-through on potentially ineligible registrations.

## I. Jurisdiction and parties

1. This action arises under the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20507 and 20510(b). Jurisdiction lies under 28 U.S.C. § 1331. Plaintiffs seek prospective declaratory and injunctive relief under § 20510(b), 28 U.S.C. §§ 2201–2202, and Rule 65 against Defendants in their official capacities. Ex parte Young, 209 U.S. 123, 159–60 (1908).

2. Venue lies in this District and the Springfield Division under 28 U.S.C. § 1391(b): Defendants' principal offices and material acts and omissions are here.

3. Laura Hois is a DuPage County resident and registered Illinois voter. She was the Republican candidate for Illinois House District 81 on November 3, 2026. Robert R. "Rusty" Stevens is a DuPage County resident and registered voter who was a candidate for DuPage County Board District 2 in that election. Their declarations identify records work, campaign burdens, and their need to examine the shared registration and participation processes used in their races before certification. Exs. J–K.

4. Jodie Zitko is a Kane County resident and registered Illinois voter whose official history records participation in three general elections in which she says she did not vote. Mary Catherine Paukstys is a Cook County resident, registered voter, and Chicago election judge whose history records a Democratic ballot in the March 17, 2020 primary although she says she cast a Republican ballot. Both seek records explaining their own entries. Exs. H–I.

5. Jimmy Lee Tillman II is a Cook County resident and registered Illinois voter. He sought the Republican United States Senate nomination in March 2026 and did not advance from the primary. He personally joined the Second Notice and seeks records for the inspection and correction activities stated in his declaration. Ex. L.

6. Harry R. Haury, a Missouri resident, and Gregory Stenstrom, a Pennsylvania resident, are individual records requesters and analysts. Haury is Chair and President of Unite 4 Freedom, Inc. ("U4F"), a nonprofit organization whose Illinois official-file analysis and inspection project predates this dispute. Stenstrom participates in that work. Stenstrom and Haury personally made the August request and joined the Second Notice. U4F also participated in those historical notices and activities but is not a plaintiff in this initial complaint. Exs. A, G, M, O.

6A. Harry R. Haury is the first-listed (lead) individual Plaintiff. All seven Plaintiffs proceed pro se, each on his or her own behalf. Gregory Stenstrom is the submitting plaintiff for administrative transmission of the jointly signed filings; he does not represent any other Plaintiff or U4F. Plaintiffs intend to seek addition of U4F as a plaintiff by amended complaint when licensed counsel authorized to practice in this Court enters an appearance for the organization, subject to Rules 15, 20, and 21 and any required consent or leave. U4F is not presently represented or seeking relief as a party, and its later addition is not automatic. References to U4F in the historical evidence identify its actual role and are retained without alteration.

7. Bernadette Matthews is the Board's Executive Director. Illinois designates that office as chief State election official for NVRA purposes.

26 Ill. Admin. Code § 216.100(b); 52 U.S.C. §

20509. John Oldfield directs the Division of Voting and Registration Systems, responsible for IVRS and related statewide records. Ex. D. Each is sued in an official capacity for prospective relief concerning records and functions within that official's authority. Local officials are not assumed to be bound merely because they participate in Illinois elections.

**II. Duties and the State records that document performance**

8. Section 20507(a)(4) requires a reasonable program to remove ineligible names because of death or changed residence, subject to statutory safeguards. Section 20507(b)(1) requires uniform and nondiscriminatory list maintenance. Sections 20507(b)(2) and (d) protect eligible voters against improper removal. When participation history is used in the notice-and-waiting process, inaccurate history can affect continued registration.

9. Section 20507(i) requires retention for at least two years and public inspection of covered list-maintenance implementation records, expressly including confirmation-notice lists and response information. Plaintiffs seek covered existing records and lawful redactions. Retention claims concern records generated or received and subject to that duty; the requested court- ordered compliance accounting is ancillary equitable relief.

10. This Court held Illinois's statewide voter file subject to § 20507(i) and conflicting State duplication restrictions preempted. Public Interest Legal Foundation, Inc. v. Matthews, 589 F. Supp. 3d 932 (C.D. Ill. 2022), No. 20-cv-3190, ECF No. 37 at 24–27 (Mar. 8, 2022). The present requests

concern existing operational records documenting maintenance. Project Vote/Voting for America, Inc. v. Long, 682 F.3d 331, 339–40 (4th Cir. 2012), and Public Interest Legal Foundation, Inc. v. Bellows, 92 F.4th 36 (1st Cir. 2024), support disclosure of covered implementation records; those decisions do not themselves order a certification restraint.

11. Illinois describes IVRS as a centralized database synchronized with local systems at least every twenty-four hours. The Board performs or coordinates matching, data exchanges, and statewide oversight. Its own overview states that IVRS work items display current and historical matches and resolution status and require local review and action. Ex. D, overview at 1–2.

12. The IVRS manual identifies Client Transmission reports, Site Activity Reports, Automatic Processing Report Details, Cancelled Voters Reports, voter snapshots, and work-item histories. Those records permit examination of source transmissions, actions, dates, and dispositions. Ex. E. Referring requesters to local offices does not provide records generated or controlled by the Board's own systems.

**III. Notice followed by incomplete performance**

13. On August 18, 2026, U4F, Stenstrom, and Haury submitted a written NVRA communication identifying Illinois-specific analyses, alleged violations, requested implementation records, and corrective action. The Board received it August 24 and acknowledged receipt by email September 4. Exs. A–B.

14. Plaintiffs sent a preservation demand September 2, received by the Board September 3. The September 4 email acknowledged both

communications and stated that the twenty-day cure period for the August notice expired September 14. Exs. B–C.

15. On September 14 the Board responded through General Counsel. It reviewed the supplied files, produced a general overview, the IVRS manual, and ERIC materials, and stated that personnel were considering additional responsive records. It expressly promised a further letter updating the § 20507(i) request. Ex. D, response at 7–8.

16. The same response disputed the August notice because a separate request had not preceded it and directed individual-record inquiries to 108 local authorities. It stated that local authorities do not report the reason for each determination to the Board, while acknowledging Board-held implementation records and continuing work on further production. Ex. D, response at 7–8.

17. As of November 4, the requesters have received no promised supplemental letter, inspection appointment for the remaining records, custodian index, or completion schedule. The remaining categories include field definitions, transmission and activity reports, automatic-processing details, work-item dispositions, and applicable notice/response records. Exs. G, O; Ex. D.

18. All seven individual Plaintiffs joined the Second NVRA Notice dated October 25 and transmitted October 26 by certified mail and email. It renews the implementation-record requests and identifies substantive process failures and verification measures. No response making those records available has been received or reviewed by the signers as of November 4. Exs. H–M, O. Exhibit M remains the notice as supplied, including its original demands.

19. The conduct requiring relief is specific: acknowledged requests remain incomplete, a promised supplement never arrived, and no inspection or completion date was set while the canvass began. Plaintiffs seek an order fixing responsibility and performance dates so that delay no longer defeats the examination they requested before Election Day.

**IV. Particular records and unresolved conditions**

20. Successive official files show 254,027 changes to 2024 participation records between January 24, 2025 and May 13, 2026: 109,976 voted-to-did-not-vote changes, 15,119 did-not- vote-to-voted changes, 111,268 deletions, and 17,664 additions. Analyses also report 288,447 changes for 2022 and 472,581 for 2020. Exs. A, M. These are historical-election fields compared in later official files, including a 2026 file. Their relevance continues because the requested source, change, and disposition records remain unavailable, and participation history can affect present list-maintenance decisions. Exhibit P maps the evidence to the records and relief requested.

21. The registration analysis reports 4,566,205 flagged instances associated with 3,875,145 identifiers; the 2024 participation analysis reports 1,468,959 instances associated with 1,045,659 identifiers. These are screening outputs. A flagged condition, established ineligibility, participation credit, and a counted unlawful ballot are separate facts to be determined from underlying evidence. Historical-field changes and the reported 56,164 difference between certified turnout and a later file do not alone establish altered certified totals. Exs. A, D, G.

22. The largest registration-date category contains 3,065,495 instances. The Board attributes apparent chronological inconsistencies to differing

local meanings of registration date, including original registration, last voter-initiated change, or last record change. Ex. D, response at 6 n.2. Plaintiffs seek the definitions and mappings used when these different values enter the statewide matching and maintenance processes.

23. Zitko's history records voting in 2010, 2014, and 2018, although she did not vote in those elections. She and her husband reported their disputed entries to the Kane County Clerk in

2023. She has received no source transaction, audit trail, or written determination explaining her entries. Ex. H.

24. Paukstys's March 17, 2020 history records a Democratic ballot although she requested and cast a Republican ballot. Her separate November 2020 election-judge party designation arose from a different assignment circumstance. She seeks the source and correction records for the March voter-history entry. Ex. I.

25. Hois requested election-mail handling and custody records on January 30, 2026; the County reported no responsive records on February 6. Her campaign later narrowed an FPCA- related request to forty-five registrants and five categories. On July 28 the County produced redacted forms but reported no responsive transmission, delivery, return, or processing-audit records in the requested categories. Those experiences explain why a referral alone has not supplied the operational trail she needs. Ex. J.

26. Stevens preserved approximately 354 returned pieces of campaign mail, including moved, vacant, unable-to-forward, and unknown markings. He needs official address histories, confirmation notices, responses, and

dispositions to determine whether the conditions were lawfully addressed. His declaration also describes direct observation of vote-by-mail verification and follow-up work. Ex. K.

27. On information and belief, the challenged statewide processes lack sufficient common definitions and change controls to ensure uniform treatment when registration-date and participation information governs matching or list status. The basis is the Board's differing-date explanation, the official-file changes, and the Plaintiffs' disputed histories. The operative mappings, controls, and source histories are held in the State and local systems and are the subject of the requests.

28. On information and belief, implementation of the residence-related program is deficient in tracing and resolving the noticed address conditions through matching, referral, notice, and disposition. The basis is the record-level address conditions in the supplied analyses, Stevens's preserved evidence, and the official responses described above. Plaintiffs challenge actual follow-through, not the existence of a program description. They seek lawful correction of verified errors and adjudication of the program's operation.

29. Plaintiffs request independent examination of continuing conditions now. Phase One traces up to fifty selected histories from the preserved baseline through available 2026 versions and the current canvass: definitions, transmissions, before-and-after values, work items, notices, responses, dispositions, and synchronization. It includes affected Plaintiffs and selected address/change conditions. Phase Two uses an approved statewide probability frame of records linked to recorded 2026 participation, with a separate historical-change sample. Report each cycle

and version separately; trace shared identifiers longitudinally where available. The proposed protocol states the controls and feasibility showing required.

**V. Injuries and relief before certification**

30. Each Plaintiff personally requested records and needs them for identified comparison and correction work. Zitko and Paukstys cannot trace their own disputed histories or present fully supported correction requests without source records. Hois and Stevens cannot complete examination of the processes used in their races during the open canvass. Exs. H–K.

31. Hois and Stevens devoted campaign time and resources to records review and follow-up described in their declarations. Their need for records during the canvass concerns their own races. Bost v. Illinois State Board of Elections, 607 U.S. ___, No. 24-568, slip op. at 3–10 & n.7 (Jan. 14, 2026), recognizes candidate standing to challenge vote-counting rules without proof of likely defeat and reserves other categories of election rules. Plaintiffs invoke its reasoning by analogy to the maintenance and participation processes affecting their races, together with the separate concrete information injuries pleaded here. Exs. J–K.

32. Stenstrom and Haury personally need the requested records to test the existing Illinois analyses, distinguish explained conditions from verified errors, and present supported jurisdiction-specific issues. Stenstrom will conduct the comparisons; Haury will direct inspection and evaluate dispositions in his individual requester capacity. Tillman will use the requested records for the comparison and correction activities stated in his declaration. The denial obstructs their existing work; litigation

expenditure is not the asserted injury. Exs. G, L, O.

33. The concern about nonqualified participation arises from the alleged failures to implement reasonable and uniform maintenance and to disclose the implementation trail. The examination must determine whether noticed conditions were explained, lawfully corrected, or left unresolved in 2026; whether they affected current registration or participation; and what qualification and acceptance evidence supports any asserted unlawful vote. Plaintiffs seek enforcement of specific duties and redress for their own denied examination and correction work. They do not ask the Court to equate an analytical flag with a disqualified voter.

34. Plaintiffs sought implementation records before Election Day to investigate identified discrepancies. Continued nonproduction prevents the requested examination while the canvass moves toward certification. A later records judgment cannot restore the opportunity to present supported issues during this canvass. Plaintiffs therefore affirmatively seek an expedited examination and a short, specified certification restraint where necessary to prevent an identified Plaintiff's concrete irreparable injury from a likely federal violation. Require a fixed endpoint, proper officials, and findings on narrower alternatives. Certification should not be treated as extinguishing these accrued access claims or unresolved requests for prospective compliance.

35. Some implementation records created during the 2024 election and canvass approach the two-year retention minimum in November and December 2026. Plaintiffs' September hold was acknowledged, but its implementation remains unconfirmed. A tailored order preserving existing records protects adjudication while allowing ongoing election operations.

35A. Plaintiffs expressly raise the Fourteenth Amendment's protection of a meaningful opportunity for adjudication and the First and Fourteenth Amendment access-to-courts principles as grounds supporting timely prospective relief. The threatened loss is effective examination and adjudication of the pleaded NVRA inspection and implementation claims during the canvass, while the requested source evidence remains controlled by officials. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428–37 (1982), supports the principle that official procedural failure cannot automatically extinguish a protected cause of action without a meaningful opportunity to be heard. Its different statutory setting requires an analogy, not an assertion that it decides election certification.

35B. Plaintiffs request a ruling on those constitutional grounds if statutory relief is held unavailable to prevent the identified loss. Christopher v. Harbury, 536 U.S. 403, 413–16 (2002), requires an arguable underlying claim and actual obstruction; the underlying claims here are specified in Counts I–III, and the requested means of removing the evidentiary obstacle are inspection, expedited discovery, and timely adjudication. Plaintiffs seek those remedies in this action. These are grounds for construing and applying the available remedies, not a freestanding constitutional right to every government record or an allegation that a separate election contest has already been lost. No assertion of partisan discrimination or deliberate judicial obstruction is made without supporting facts.

## VI. Statutory notice

36. Stenstrom and Haury individually rely on the August communication, acknowledged August 24, the Board's September 14 response and stated deadline, and continuing noncorrection more than twenty days afterward. The written communication identified the asserted violations and exact implementation-record categories. 52 U.S.C. § 20510(b)(2); Exs. A–D.

37. All Plaintiffs alternatively invoke § 20510(b)(3) for the challenged failures occurring within thirty days before the November 3 federal election, including the failures identified in Exhibit M. If an additional cure period applies to a Second Notice claim, Plaintiffs request supplementation under Rule 15(d) upon its expiration and separate adjudication of the matured August claims. Receipt on October 26 would yield November 15 as the twentieth day; actual receipt controls.

## VII. Claims for relief

### Count I — Failure to provide public inspection

38. Plaintiffs incorporate paragraphs 1–37. Defendants have failed to make available covered existing implementation records requested in Exhibits A and M, including the priority records in paragraph 29, in violation of 52 U.S.C. § 20507(i). The identified reports, histories, notices, and dispositions concern implementation of list-maintenance activities. Plaintiffs seek prompt inspection, lawful redaction, and ancillary compliance reporting under § 20510(b). Preservation and retention relief accompanying Count I

39. Plaintiffs request preservation of existing covered records and identification of actual gaps, retention schedules, and disposition dates as

ancillary relief under Count I. The present packet does not establish a specific unlawful destruction. Any additional retention claim will require facts identifying a covered record, the duty and applicable period, and its loss or unlawful disposition.

**Count II — Nonuniform list maintenance**

40. Plaintiffs incorporate paragraphs 1–37. The operational use of inconsistent registration- date meanings and inadequately controlled participation changes, when used for matching or list- status decisions, fails to provide uniform administration under § 20507(b)(1), on the information- and-belief basis pleaded above. Plaintiffs seek production and examination of the operative controls and prospective correction of the nonuniform processes established by the evidence.

**Count III — Deficient residence-related maintenance**

41. Plaintiffs incorporate paragraphs 1–37. The failure to implement reasonable follow- through on the noticed residence-related conditions, on the information-and-belief basis pleaded above, violates § 20507(a)(4)(B). Plaintiffs seek examination of matching, referrals, notices, and dispositions and prospective compliance with a reasonable program, subject to all safeguards in § 20507(b)–(d).

**VIII. Prayer for relief**

A. Declare and remedy the established violations of § 20507(i), (b)(1), and (a)(4)(B);

B. Order immediate preservation of the existing responsive records and suspension of deletion or overwriting needed to preserve them;

C. Require identification of responsible custodians and known certification dates within two business days; initial inspection of paragraph 29 records within three business days of an inspection order; and a sworn category-by-category accounting of searches, production, withholding grounds, custodians, gaps, and completion dates within five business days;

D. Authorize immediate independent examination under the proposed two-phase protocol, limited expedited discovery, and examiner access to covered records and separately authorized discovery; require a preliminary report before the relevant certification;

E. Enter a short restraint on specified certification acts if the noticed record establishes likely federal violation, concrete irreparable injury to an identified Plaintiff, proper officials, necessity, and a fixed endpoint; decide that affirmative request at an urgent hearing before the relevant act, with separate consideration of immediately available access and examination relief;

F. Permit expedited joinder of officials needed for supported certification relief and a prompt supplemental evidentiary submission. Grant the independent examination or any narrower supported relief without making all relief depend on a statewide certification halt;

G. Order supported prospective program compliance and lawful correction; decide the pleaded constitutional grounds if necessary; state findings and conclusions under Rule 52(a)(2) for each interlocutory injunction granted or refused, including any narrower relief, and award allowable costs and counsel fees under § 20510(c).

## PRO SE SIGNATURES AND CONTACT INFORMATION

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Each individual signs only for himself or herself. Gregory Stenstrom submits the documents as a co-plaintiff and does not appear as counsel for any other person or organization.


**s/Harry R. Haury**

Harry R. Haury, Pro Se

c/o Unite 4 Freedom, Inc., 167 Lamp & Lantern Village, Suite 194, Chesterfield, MO 63017

Telephone: 314-498-2569

Email: harryhaury@protonmail.com

**s/Laura Hois**

Laura Hois, Pro Se

4405 Oakwood Ave., Downers Grove, IL 60515

**s/Robert R. Stevens**

Robert R. Stevens, Pro Se

700 S. Monterey, Villa Park, IL 60181

**s/Jimmy Lee Tillman II**

Jimmy Lee Tillman II, Pro Se

7732 S. Calumet, Chicago, IL 60619

**s/Jodie Zitko**

Jodie Zitko, Pro Se

3N778 Walt Whitman Rd., St. Charles, IL 60175

Email: jodie.zitko@usa4freedom.org

**s/Mary Catherine Paukstys**

Mary Catherine Paukstys, Pro Se

5244 S. Newcastle Avenue, Chicago, IL 60638

**s/Gregory Stenstrom**

Gregory Stenstrom, Pro Se

1541 Farmers Lane, Glen Mills, PA 19342

Telephone: 856-264-5495

Email: gregorystenstrom@gmail.com