E-FILED
Tuesday, 17 November, 2026 04:16:32 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

HARRY R. HAURY; LAURA HOIS; ROBERT R. "RUSTY" STEVENS; JIMMY LEE TILLMAN II; JODIE ZITKO; MARY CATHERINE PAUKSTYS; and GREGORY STENSTROM,

Plaintiffs,

v.

BERNADETTE MATTHEWS and JOHN OLDFIELD, each in his or her official capacity,

Defendants.

Case No. 26-cv-3397

# MEMORANDUM SUPPORTING RELIEF BEFORE CERTIFICATION

**I. The order requested Plaintiffs request examination of a continuing record-maintenance and reconciliation problem before certification. The record includes a comparison reaching May 13, 2026, unresolved individual histories, and 2026 requests and responses. The earlier election fields supply the baseline for testing what persisted, changed, or was corrected in the processes used today. Immediate inspection and targeted longitudinal tracing should proceed now; statewide probability sampling and any limited certification restraint should receive prompt decisions on the supporting evidence. Exhibit P supplies the evidence-to-relief map. The substantive claims remain important. A reasonable and uniform maintenance program requires actual implementation. The documented questions concern inconsistent field meanings, changes to participation histories, and follow-through on noticed residence-related conditions. The requested examination tests those claims while the canvass remains open.**

**II. Governing standard Plaintiffs must show likely success, likely irreparable harm, a favorable balance of equities, and consistency with the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 24 (2008). The Seventh Circuit requires a strong showing of likely success that explains how the claim will be proved. Illinois Republican Party v. Pritzker, 973 F.3d 760, 763 (7th Cir. 2020). The proof here begins with the written requests, acknowledgments, partial response, identified reports, and sworn accounts of continuing nonproduction and concrete intended uses. Rule 65 requires notice and specific terms. The**

**proposed orders state categories, custodians, and deadlines. Rule 26(d)(1) permits court-authorized discovery before the Rule 26(f) conference. Civil Local Rule 7.1 ordinarily allows fourteen days to respond; Plaintiffs request a shortened schedule by court order and oral argument under Rule 7.1(A)(2).**

**III. The inspection claim has a concrete factual and legal foundation Section 20507(i) covers existing implementation records concerning accurate and current lists. Public Interest Legal Foundation, Inc. v. Matthews, 589 F. Supp. 3d 932 (C.D. Ill. 2022), No. 20-cv-3190, ECF No. 37 at 24–27, held the Illinois statewide list disclosable and conflicting State duplication restrictions preempted. Project Vote/Voting for America, Inc. v. Long, 682 F.3d 331, 339–40 (4th Cir. 2012), explains how disclosure enables public accountability. Public Interest Legal Foundation, Inc. v. Bellows, 92 F.4th 36 (1st Cir. 2024), supports statewide-file disclosure. The reports and histories identified here must be evaluated by their actual function, not merely labeled technical data. These authorities support access; the additional injunction requires the separate equitable showing. The Board's response and overview describe its matching, synchronization, and work-item functions. The manual names transmission reports, activity reports, automatic-processing details, snapshots, cancellations, and dispositions. Exs. D–E. Plaintiffs seek those existing records, with lawful redaction, in the categories already requested. A general description of safeguards cannot replace the records showing what happened in the disputed processes. The compliance accounting makes access enforceable:**

**identify the custodian and search, available records, specific withholding basis, actual gaps and disposition dates, and completion date. Preservation protects existing evidence. No independent retention count rests merely on inability to obtain an old source record; a newly supported retention violation would require identification of the record, duty, period, and loss.**

**IV. Each requested remedy addresses an identified injury Zitko disputes three participation entries in her own history; Paukstys disputes the party-ballot entry in hers. Both need source and disposition records to investigate and seek supported correction. Hois and Stevens describe particular records and follow-up work connected to the shared processes used in their November races. The individual analysts Stenstrom and Haury need the records to complete their existing Illinois comparisons and submit verified issues to responsible officials. Exs. G–L, O. A statutorily denied information right must have concrete consequences. Federal Election Commission v. Akins, 524 U.S. 11, 21 (1998); TransUnion LLC v. Ramirez, 594 U.S. 413, 442 (2021). Those consequences are specified here: inability to trace personal entries, test identified conditions, and present supported issues during the current canvass. Access and examination supply the information needed to perform that work. Bost v. Illinois State Board of Elections, 607 U.S. ___, No. 24-568, slip op. at 3–10 & n.7 (Jan. 14, 2026), concerns candidate standing to challenge vote-counting rules and expressly reserves other categories. Its candidate-process reasoning supports an analogy here, not a controlling holding on every maintenance claim. Hois and Stevens also plead concrete denial of**

**information needed for work concerning their own races. Tillman relies on his own records request and intended uses, not a claim that he advanced from the primary. The candidates' actual results and ongoing interests must be accurately presented; a win or loss alone does not decide every asserted injury. Casillas v. Madison Avenue Associates, Inc., 926 F.3d 329, 334–35 (7th Cir. 2019), distinguishes a bare informational omission from one that frustrates an intended use and causes harm. Here the declarations identify actual uses: tracing personal histories, testing preserved record changes, and presenting supported issues during the canvass. Zitko also describes her repeated ballot-request and surrender practice after discovering her disputed history. The Court should evaluate the factual burden and causal connection rather than assume every precaution establishes injury. Ex. H ¶¶2–8. Paukstys identifies her own disputed history and March 2026 election-judge records work. Ex. I.**

**V. Notice is supported by the actual written chronology Stenstrom and Haury, together with nonparty U4F, submitted the August writing identifying alleged violations and records. The Board received it August 24, acknowledged it September 4, identified September 14 as the cure deadline for that notice, and responded September 14 with partial production and a promised supplement. Exs. A–D, O. The continued nonproduction supports their § 20510(b)(2) position. The Board's argument that a separate request should have preceded the notice requires a ruling; its partial response and promise bear on that issue but are not treated as an automatic waiver of statutory prerequisites. All Plaintiffs also**

**invoke § 20510(b)(3) for challenged failures occurring within thirty days before the federal election. Exhibit M supplies the renewed requests and substantive notice. If the Court requires an additional cure period for a Second Notice claim, the period runs from established receipt; receipt October 26 yields November 15 as the twentieth day. Plaintiffs request supplementation under Rule 15(d) when appropriate and separate determination of the matured August claims.**

**VI. The substantive duties justify focused examination Section 20507(a)(4)(B) requires a reasonable residence-related program, and § 20507(b)(1) requires uniform maintenance. Section 20509 assigns coordination responsibility. The complaint identifies a factual basis for testing implementation: different local meanings of a statewide field, extensive historical participation changes, personal disputed histories, and preserved address evidence. Exs. A, D, H–K. The examination follows the records across time: the preserved historical baseline, the May 2026 statewide version, later authenticated 2026 versions, and current registration/participation where available. For shared identifiers, trace the recorded change, source, legal basis, disposition, and effect on current status. This tests continuity rather than treating each election as an isolated event. Historical and current-election error estimates require separately defined populations; a longitudinal link can establish persistence without treating a historical total as a current unlawful-ballot count. Ex. P; proposed protocol. The proposed examiner is a party-retained independent professional, subject to qualifications and conflicts disclosures, lawful access, and**

**discovery limits. Plaintiffs request no delegation of judicial decision-making or compulsory special-master appointment by label. Any later Rule 53 appointment requires its own findings and terms. The examiner must authenticate source versions, disclose the sampling frame and code, distinguish flags from verified violations, preserve ballot secrecy, and testify to methodology, cost, and completion time before Phase Two is ordered. Husted v. A. Philip Randolph Institute, 584 U.S. 756 (2018), upholds the notice-and-waiting process Congress authorized; Plaintiffs seek documented implementation subject to those safeguards. Historical participation credit can affect that process in either direction when actually used. The examination must determine whether inconsistent fields or unexplained changes caused different maintenance treatment; differing definitions or returned campaign mail alone do not establish that conclusion. Counts II–III seek adjudication of the pleaded implementation failures, with additional evidence obtained through the requested discovery.**

**VII. Delay causes a loss that later production cannot repair The current canvass is a finite opportunity to examine official records and present supported issues before certification. The declarations identify the comparisons Plaintiffs intend to perform now. Continued withholding consumes that opportunity. A later response cannot recover the elapsed time or permit a timely submission in the completed canvass. Preservation addresses a separate risk. Some records created during the 2024 election and canvass approach the two-year minimum; the acknowledged hold has not been confirmed. Plaintiffs assert no known scheduled**

**destruction date. A tailored hold preserves the evidence while allowing live database operations and the canvass to continue. The balance favors a bounded examination of existing administrative data, with secure access and staged reporting. Phase One begins with selected histories; Phase Two proceeds only on an approved frame and sworn feasibility evidence. A proposed 99-percent confidence and five- percentage-point precision target would require 664 usable observations in a large-population simple-random design at maximum variance, before any finite-population correction or adjustment for stratification, clustering, or missing evidence. It is a planning baseline, not a conclusion about errors or an approved final sample.**

**VIII. Keep the examination tied to certification and actual authority The Court should set its return hearing before the relevant certification. The Board's published agenda lists proclamation of the November election results for December 4, 2026 at 10:00 a.m. The county-abstract period for specified offices ends November 24 under 10 ILCS 5/22-1; the State canvass period ends December 4 and permits earlier action under § 22-7. Those outer limits do not establish the actual local proceedings. Require identification of those dates immediately and complete the focused examination before the applicable event. Illinois State Board of Elections, Board Agenda, https://www.elections.il.gov/abouttheboard/agenda.aspx (reviewed Nov. 4, 2026). Rules 65(d)(2), 19, and 21 govern who is bound and any necessary joinder. An order against these Defendants should reach the records and functions they control. If evidence warrants**

**relief requiring a local custodian or canvassing official, Plaintiffs should promptly bring the appropriate official before the Court with notice and process. A certification restraint requires findings under Winter and Rule 65. Evaluate the continuing violation using the full chronology, including the official-file comparison through May 2026 and current disputes and denied access. Historical evidence remains relevant to persistence, notice, and the necessity of examination. For a short restraint affecting specified races, identify the concrete present injury, imminent act, responsible official, necessity, and duration. Join any official needed to implement it. The examination should proceed on its independently supported grounds while the Court decides the additional restraint.**

**IX. Meaningful adjudication and the constitutional grounds raised**

**Plaintiffs expressly raise the First and Fourteenth Amendment access-to-courts principles and Fourteenth Amendment procedural due process in support of timely adjudication and prospective relief. They identify a concrete sequence: pre-election requests for records needed to test specified statutory conditions; official control of that evidence; continuing nonproduction; and an advancing canvass. A decision that access will eventually be supplied does not by itself decide whether the lost time-sensitive use is adequately remedied. The Court should determine that injury and the necessity of relief under Winter rather than equate certification with an automatic end to examination. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428–37 (1982), rejected extinction of a protected statutory cause of action through official procedural failure without a meaningful opportunity to be heard. It**

**concerned an adjudicatory deadline in an employment-discrimination scheme, not election certification. Plaintiffs invoke its due-process principle by analogy: if a timing or finality rule is asserted to defeat effective adjudication here, determine the protected interest, actual procedural opportunity, governmental justification, and available adequate alternative before treating the pleaded claims as foreclosed. Christopher v. Harbury, 536 U.S. 403, 413–16 (2002), requires an arguable underlying claim and actual obstruction for an access theory. The underlying statutory claims and their factual bases appear in Counts I–III; Plaintiffs seek to remove the claimed evidentiary obstacle through access, expedited discovery, and a prompt judicial determination in this action. They do not allege an already lost separate election contest or seek damages for one. The constitutional grounds do not supply a general right to government information or dispense with standing, notice, proof, or the Rule 65 factors. If effective statutory relief resolves the controversy, no unnecessary constitutional decision is requested. The present record does not establish purposeful partisan discrimination, a similarly situated comparator class, or arbitrary ballot treatment sufficient for an independent equal-protection count. The statutory uniformity claim remains affirmative; it must be tested against actual treatment. Additional constitutional claims require supporting facts and proper amendment, not a blanket reservation. No constitutional defect in an identified State statute is pleaded merely because prospective relief may affect an official act. Purcell v. Gonzalez, 549 U.S. 1, 4–5 (2006), requires attention to election**

**disruption and competing harms. Voting has occurred; this request does not change voter instructions or ballot eligibility rules. Certification relief still affects finality and must be justified on the actual record. Plaintiffs seek a short, specified restraint only if immediate access and a bounded examination cannot otherwise protect the identified injury; the public's interest in timely finality must be weighed alongside Congress's disclosure and accuracy objectives. A right to investigate is not proof that a result is wrong. Plaintiffs request express decisions on: (1) whether the identified IVRS records are covered and the statutory notice sufficient; (2) whether continuing withholding causes a concrete loss of useful examination during this canvass; (3) whether expedited access and expert discovery can adequately address it before the relevant act; (4) whether a short restraint is necessary and lawful as to identified officials and races; and (5) if effective statutory relief is unavailable, whether the asserted procedural foreclosure is consistent with the constitutional grounds above. These questions concern the pending requested relief, not an advisory declaration about hypothetical future litigation. Rule 52(a)(2) requires findings and conclusions when an interlocutory injunction is granted or refused. Plaintiffs request separate disposition of preservation, mandatory access, and certification restraint, with reasons for any narrower alternative or refusal. They request a prompt ruling before the identified certification act so that available review remains practical. They do not ask the Court to decide in advance that every order is appealable or that certification automatically moots or preserves every claim.**

Requested disposition Enter immediate preservation and scheduling relief after notice. At the first hearing, decide independent examination, rolling access, sworn reporting, and the process for promptly finalizing the statewide sample. Also hear the evidence and joinder needs for a short, specified certification restraint. Set an early return before the relevant certification for findings and any necessary final adjustment. Grant each independently supported obligation even if the broader request requires additional evidence.

**X. Individual Plaintiffs and prospective organizational joinder Each current Plaintiff proceeds pro se and asserts his or her own claims. U4F is not a current plaintiff. Its participation in the notices and historical analysis remains relevant evidence; the current requested relief rests on the individual Plaintiffs' pleaded interests. Plaintiffs intend to seek addition of U4F when licensed counsel enters for it, subject to Rules 15, 20, and 21 and any required court permission. An appearance alone will not add the organization, and the current complaint does not purport to preserve a filing date for any later organizational claim.**

## PRO SE SIGNATURES AND CONTACT INFORMATION

MEMORANDUM SUPPORTING RELIEF BEFORE CERTIFICATION

Each individual signs only for himself or herself. Gregory Stenstrom submits the documents as a co-plaintiff and does not appear as counsel for any other person or organization.

**s/Harry R. Haury**

Harry R. Haury, Pro Se

c/o Unite 4 Freedom, Inc., 167 Lamp & Lantern Village, Suite 194, Chesterfield, MO 63017

Telephone: 314-498-2569

Email: harryhaury@protonmail.com

**s/Laura Hois**

Laura Hois, Pro Se

4405 Oakwood Ave., Downers Grove, IL 60515

**s/Robert R. Stevens**

Robert R. Stevens, Pro Se

700 S. Monterey, Villa Park, IL 60181

**s/Jimmy Lee Tillman II**

Jimmy Lee Tillman II, Pro Se

7732 S. Calumet, Chicago, IL 60619

**s/Jodie Zitko**

Jodie Zitko, Pro Se

3N778 Walt Whitman Rd., St. Charles, IL 60175

Email: jodie.zitko@usa4freedom.org

**s/Mary Catherine Paukstys**

Mary Catherine Paukstys, Pro Se

5244 S. Newcastle Avenue, Chicago, IL 60638

**s/Gregory Stenstrom**

Gregory Stenstrom, Pro Se

1541 Farmers Lane, Glen Mills, PA 19342

Telephone: 856-264-5495

Email: gregorystenstrom@gmail.com