E-FILED
Tuesday, 17 November, 2026 04:16:33 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

HARRY R. HAURY; LAURA HOIS; ROBERT R. "RUSTY" STEVENS; JIMMY LEE TILLMAN II; JODIE ZITKO; MARY CATHERINE PAUKSTYS; and GREGORY STENSTROM,

Plaintiffs,

v.

BERNADETTE MATTHEWS and JOHN OLDFIELD, each in his or her official capacity,

Defendants.

Case No. 26-cv-3397

# PROPOSED INDEPENDENT EXAMINATION PROTOCOL

1. Scope and two distinct populations Request independent examination of the maintenance processes pleaded in the complaint. Phase One traces up to fifty selected histories across selected jurisdictions, including the affected Plaintiffs' records. Phase Two uses a probability sample from an identified statewide frame of registration records linked to recorded participation in the November 3, 2026 election. Historical participation-change records are a separate population with separate findings. Do not infer a current-election error rate from the historical population.

2. Examiner and authority Before approval, submit the examiner's identity, relevant qualifications, CV, conflicts and financial-interest disclosures, compensation, staffing, secure-access arrangements, method, and feasible completion date in a signed declaration. The examiner is a retained professional working under the access/discovery order; legal determinations remain with the Court. Any special- master role requires a

separate Rule 53 process.

3. Frame and version control Use an identified official export and timestamp; disclose which jurisdictions and participation statuses it contains and any omissions. Define eligibility/participation dates and field meanings before selection. Preserve source bytes and hashes. Treat later additions, corrections, and pending participation as a disclosed supplemental frame or wave, with a method preventing duplicate selection. Describe coverage limits and weighting before presenting any statewide estimate.

4. Phase One targeted tracing Securely designate source/version, identifier, condition, and requested category. Trace shared identifiers from the preserved historical baseline through available 2026 versions and current registration/participation. Record source transmissions, prior/new values, timestamps, user/process identifiers, matching work items, notices/responses, dispositions, and synchronization. Identify persistence, correction, recurrence, and any effect on current status separately. Classify each result as explained with support, supported error, disputed, or unresolved for specified missing evidence. Targeted findings are not a statistical estimate.

5. Phase Two proposed statistical design The initial proposal uses 99-percent confidence and a five-point margin for a proportion: 664 usable observations for a large-population simple-random design at maximum variance. As a bounded alternative, propose 1,000 records, expandable only by approval to 2,000, with an interim batch of 300 where feasible before the relevant certification. Use a separate historical- change frame and a 2026 registration/participation frame, defined in advance. The

examiner must justify the actual design, cost, and reporting dates; these counts are proposals, not commitments or completed findings. Use mutually exclusive strata or disclosed methods for overlapping anomaly categories, an unflagged comparison stratum, known inclusion probabilities, and appropriate weights. Disclose frame dates, seed, code, missing-record rules, and any design effects before selection. Report missing evidence separately from a demonstrated legal failure. An interim batch drawn or stopped selectively cannot support a statewide estimate without a valid design. Statewide estimates do not establish any particular race's error rate; separately design any race-level examination.

6. Questions tested For selected records determine whether the recorded maintenance action has a traceable source, consistent field meaning, applicable notice/response, disposition, and synchronization. Where qualification is at issue, identify the legal requirement, relevant date, evidence, and official determination. Separately identify participation credit and any lawfully available issuance, return, acceptance/rejection, and reconciliation evidence. An unconfirmed field or missing record is reported as such, not converted into ineligibility or an unlawful counted ballot.

7. Access and protection Use records within the bound Defendants' possession, custody, or control and separately authorized discovery. Obtain solely local material by agreement, subpoena, or appropriate joinder. Use secure identifiers, public redactions, access logs, and preservation of originals. Do not link voter identities to ballot selections. Identify concrete retrieval burdens and narrower alternatives promptly; undisputed duties continue.

8. Timetable and reporting Within three business days of usable access, submit the final design and sworn cost/timing statement for judicial approval. Supply Phase One preliminary findings within seven business days, accelerated if necessary for certification. Propose an actual Phase Two completion date with staffing assumptions. Report resolved conditions, supported errors, disputes, missing evidence, coverage limits, and confidence intervals only when justified. Request an immediate conference for an imminent certification or access obstacle.

9. Certification relief hearing At the first noticed opportunity, identify the November 2026 condition, injured Plaintiff/race, responsible official, imminent certification act, irreparable injury, alternatives, and proposed fixed endpoint supporting any limited restraint. A restraint is a separate judicial decision; this protocol is not an automatic prerequisite to all certification or a finding that current results are incorrect.